# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ERICA R. BARRETT, KATHLEEN D. VINCENT, CONNIE ENDERLE, EDWARD Q. INGERSON, II, PENNY M. KENOYER and GILBERT J. ONTIVEROS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 6:22-cv-03111-JAM |
| v. | ) ) ) | |
| O'REILLY AUTOMOTIVE, INC., THE BOARD OF DIRECTORS OF O'REILLY AUTOMOTIVE, INC., O'REILLY AUTOMOTIVE 401(K) PLAN INVESTMENT COMMITTEE and JOHN DOES 1-30, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Charles B. Cowherd   Mo. Bar No. 27087
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone:     417-888-1000
Facsimile:     417-881-8035
ccowherd@spencerfane.com

James R. Carroll (admitted *pro hac vice*)
Michael S. Hines (admitted *pro hac vice*)
Mary E. Grinman (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE**
    **MEAGHER & FLOM LLP**
500 Boylston Street
Boston, Massachusetts 02116
Telephone:     617-573-4800
Facsimile:     617-573-4822
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants*

Dated:  September 2, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.    The Plan ............................................................................................................ 3

    B.    Plaintiffs' Allegations ...................................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.    PLAINTIFFS FAIL TO PLEAD ANY FACTS TO SUPPORT
A REASONABLE INFERENCE OF IMPRUDENT CONDUCT (COUNT I) ................. 6

    A.    Plaintiffs' Conclusory Recordkeeping Fee
         Allegations Fail To State A Claim For Breach Of Fiduciary Duty ........................ 7

         1.    Plaintiff's Recordkeeping Fee Calculations Are Unsupportable ............... 7

         2.    The Comparative Plans That Plaintiffs Cite Do Not Provide
             Meaningful Benchmarks For the Plan's Recordkeeping Fees .................... 9

         3.    Plaintiffs' Speculative Allegation That Plan Fiduciaries Did Not
             Conduct A Request For Proposal Does Not Suggest Imprudence ............. 11

    B.    Plaintiffs' Verbatim Allegations Concerning the Investment
         Options In The Plan Fail To State A Claim For Breach Of Fiduciary Duty ......... 12

    C.    Plaintiffs Recycle Their Total Plan Cost Allegations
         And Again Fail To State A Claim For Breach Of Fiduciary Duty ........................ 14

II.    PLAINTIFFS' MAKE NO IMPROVEMENTS TO THEIR
CONCLUSORY ALLEGATIONS CONCERNING THE DUTY  TO
MONITOR AND THEREFORE FAIL TO STATE A CLAIM (COUNT II) ................. 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................5, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................4

*Cates v. Trustees of Columbia University in City of New York*,
    No. 1:16-cv-06524 (GBD) (SDA), 2019 WL 8955333 (S.D.N.Y. Oct. 25, 2019).............7

*Cunningham v. USI Insurance Services, LLC*,
    No. 21 Civ. 1819 (NSR), 2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ...........................15

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
    No. 17-cv-6685 (ALC), 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019).................6, 11, 15

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...................................................................................................5

*Johnson v. PNC Financial Services Group, Inc.*,
    No. 2:20-CV-01493-CCW, 2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) .................10, 11

*Kurtz v. Vail Corp.*,
    511 F. Supp. 3d 1185 (D. Colo. 2021)............................................................................13

*Marks v. Trader Joe's Co.*,
    No. CV 19-10942 PA (JEMx), 2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) .................8

*Mator v. Wesco Distribution, Inc.*,
    No. 2:21-CV-00403-MJH, 2022 WL 3566108, (W.D. Pa. Aug. 18, 2022).....................10

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018). ............................................................................... passim

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v.*
    *Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013)........................................................................................5

*Perkins v. United Surgical Partners International Inc.*,
    No. 3:21-CV-00973-X, 2022 WL 824839 (N.D. Tex. Mar. 18, 2022).......................12, 14

*Riley v. Olin Corp.*,
    No. 4:21-cv-01328-SRC, 2022 WL 2208953 (E.D. MO. June. 21, 2022) ............... passim

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...............................................................................5

Case 6:22-cv-03111-BCW   Document 27   Filed 09/02/22   Page 3 of 22

*Tobias v. NVIDIA Corp.*,
    No. 20-CV-06081-LHK, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021)...........................7

*Usenko v. MEMC LLC*,
    926 F.3d 468 (8th Cir. 2019) ................................................................................6

*Wehner v. Genentech, Inc.*,
    No. 20-CV-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) .....................10, 11

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017),
    *aff'd*, 752 F. App'x 453 (9th Cir. 2018)................................................................3

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................11, 14

*Wildman v. American Century Services, LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ..................................................................15

## **STATUTES**

29 U.S.C. § 1104..................................................................................................4, 6

<u>**PRELIMINARY STATEMENT**</u>

Defendant O'Reilly Automotive, Inc., ("O'Reilly") is a leading auto parts retailer with more than 5,800 stores nationwide and more than 82,000 employees.  O'Reilly offers its employees the opportunity to save for their retirement by participating in the O'Reilly Automotive, Inc. Profit Sharing and Savings Plan (the "Plan").

Plaintiffs (six former employees of O'Reilly) allege in Count I of the First Amended Class Action Complaint (ECF No. 24) (the "Amended Complaint," cited herein as "Am. Compl. ¶ __") that Defendants breached their fiduciary duties of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA") because they (1) negotiated Plan recordkeeping fees[1] that Plaintiffs allege were too high, (2) retained ten cherry-picked with hindsight investment options in the Plan that Plaintiffs allege were too expensive, and (3) allowed the Plan to pay total plan costs that were higher than certain inapposite averages alleged by Plaintiffs.  Plaintiffs also allege in Count II of the Amended Complaint that certain Defendants breached fiduciary duties under ERISA by failing to adequately monitor the performance of other Plan fiduciaries.

Plaintiffs' Amended Complaint is their second bite at the apple.  Plaintiffs filed the initial Class Action Complaint (ECF No. 1) (the "Complaint," cited herein as "Compl. ¶ __") in May 2022.  Defendants moved to dismiss the Complaint on July 19, 2022 (*see* Defendants' Motion to Dismiss the Complaint (ECF No. 15)) and Plaintiffs filed the Amended Complaint on August 12, 2022.  (*See* Am. Compl.)  The Amended Complaint -- which adds only seven new factual paragraphs to the Complaint (*see* Am. Compl. ¶¶ 11, 90 n. 11, 93-97) -- substantially

---

[1]     "'Recordkeeping' is a catchall term for the suite of administrative services typically provided to a defined contribution plan," including transaction processing, administrative services, participant communications, and plan document services.  (*See* Am. Compl. ¶¶ 78-79.)

repeats the conclusory allegations in the Complaint and fails to cure any of the pleading deficiencies identified by Defendants in their initial Motion to Dismiss. For multiple independent reasons, the Amended Complaint should be dismissed as a matter of law.

*First*, Plaintiffs' assertion that Plan participants paid annual recordkeeping and administrative fees ranging between $47 and $88 to the Plan's recordkeeper has no factual basis. Although Plaintiffs provide an appendix in the Amended Complaint which purports to show their calculations, the Appendix is riddled with unsubstantiated assumptions and inaccuracies. Moreover, Plaintiffs' attempt to compare the alleged recordkeeping fees paid by the Plan to fees purportedly paid by other retirement plans fails to satisfy the Eighth Circuit's pleading requirement that a plaintiff alleging a breach of the duty of prudence "provide a sound basis for comparison -- a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs' price tag to price tag comparison for plans with differing features and options falls far short of "meaningful."

*Second*, the Amended Complaint adds *no* factual support to Plaintiffs' allegation -- repeated from the Complaint -- that ten of the Plan's thirty investment options were imprudent because they were more expensive than certain average and median fees selected by Plaintiffs. Similar to their recordkeeping fee allegations, Plaintiffs' chosen investment fee benchmarks fail to "provide a sound basis for comparison" and have been rejected by multiple courts. Moreover, Plaintiffs' singular focus on cost of the ten investment options -- divorced from any of the options' other features, including, most notably, investment performance -- is nonsensical and does not state a claim for relief.

*Third*, Plaintiffs' remaining allegation that the Plan's total costs were higher than certain averages chosen by Plaintiffs suffers from the same infirmities as Plaintiffs' other

allegations. Plaintiffs again fail to allege facts showing why the averages that they have selected "provide a sound basis for comparison."

## BACKGROUND

### A. The Plan

The Plan is a "defined contribution" 401(k) plan that allows eligible O'Reilly employees to contribute savings to individual participant accounts. (Am. Compl. ¶ 44.) Each participant's account is funded through a combination of the participant's contributions, O'Reilly's contributions, and earnings from the investment options selected by the participant. (*See id.* ¶¶ 44, 46-47.) The Plan is participant-directed; that is, each participant may choose to allocate his or her account into any of the investment options available in the Plan. (*Id.* ¶ 53.) As of December 2020, the Plan's investment lineup was comprised of a broad array of thirty investment options managed by different third-party managers, including actively managed mutual funds, passively managed mutual funds, a money market fund, and collective trusts.[2] (*See id.* ¶ 53; Hines Decl. Ex. 5; *see also* App. A.)[3] The Plan's investment options span a variety

---

[2]     *See* Appendix A for a complete list of investment options available in the Plan as of December 31, 2020, as reported in the Plan's Form 5500. The Form 5500 filings, which Plaintiffs rely on frequently in the Complaint, are "the annual report[s] that 401(k) plans are required to file with the [Department of Labor] and U.S. Department of Treasury pursuant to the reporting requirements of ERISA." (Am. Compl. ¶ 79(H) n.10.) Because the Forms 5500 are "embraced" in Plaintiffs' Complaint, the Court may consider them at the motion to dismiss stage. *See infra* note 3.

[3]     Citations in the form of "Hines Decl. Ex. __" are to the Declaration of Michael S. Hines, submitted herewith. This Court may take judicial notice of exhibits attached to the Hines Declaration as it is well established that "[i]n deciding or reviewing motions to dismiss, courts may also consider those materials that are necessarily embraced by the pleadings." *Meiners*, 898 F.3d at 822. In the ERISA context, courts frequently consider plan-related documents, including required disclosures and publicly filed documents, at the motion to dismiss stage. *See e.g.*, *id.* at 823 (considering an investment fund prospectus that was not attached to the complaint at the motion to dismiss stage); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of Form 5500 filings, participant disclosures,

3

of asset classes, including large cap, mid cap, small cap, international equity, and bond funds as well as target date funds.

Between 2016 and the present, the Plan contracted with T. Rowe Price to receive recordkeeping services. (Am. Compl. ¶ 92.) Plaintiffs mistakenly allege that the participant fees for those services ranged between $47 and $88 between 2016 and 2020. (*Id.* ¶ 90.)

## B. **Plaintiffs' Allegations**

Plaintiffs Erica R. Barrett, Kathleen D. Vincent, Connie Enderle, Edward Q. Ingerson, II, Penny M. Kenoyer and Gilbert J. Ontiveros purport to assert claims on behalf of a putative class comprised of "[a]ll persons . . . who were participants in or beneficiaries of the Plan, at any time between May 2, 2016 through the date of judgment" excluding Defendants. (Am. Compl. ¶¶ 18-23, 37.) Plaintiffs assert two counts:

- Count I alleges that the O'Reilly Automotive 401(k) Plan Investment Committee and its members breached their fiduciary duty of prudence under ERISA § 404, 29 U.S.C. § 1104, by allegedly failing to control the Plan's recordkeeping and administrative costs and by retaining allegedly imprudent investment options in the Plan. (*Id.* ¶¶ 12, 100-107.)

- Count II alleges that O'Reilly and the O'Reilly Board of Directors breached their fiduciary duty to monitor the performance and processes of the Plan's other fiduciaries. (*Id.* ¶¶ 108-114.)

For the reasons set forth below, both Counts should be dismissed as a matter of law for failure to state a claim.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although

---

and publicly available articles at the motion to dismiss stage), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

4

the court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in favor of the plaintiff, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the ERISA context, a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims" and calls for "careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022). Indeed, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Dismissing ERISA claims that rest on conclusory allegations -- like those here -- "prevent[s] settlement extortion" where "a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* (emphasis in original) (citations omitted).

Case 6:22-cv-03111-BCW   Document 27   Filed 09/02/22   Page 9 of 22

## I. PLAINTIFFS FAIL TO PLEAD ANY FACTS TO SUPPORT A REASONABLE INFERENCE OF IMPRUDENT CONDUCT (COUNT I)

Count I alleges that the O'Reilly Automotive 401(k) Plan Investment Committee breached their fiduciary duty of prudence under ERISA § 404. (Am. Compl. ¶¶ 12, 102-103.) ERISA § 404 imposes a "[p]rudent [person] standard of care" for fiduciaries of employee benefit plans. 29 U.S.C. § 1104(a). The prudent person standard charges fiduciaries with acting "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). "The 'prudent person standard is an objective standard that focuses on the fiduciary's conduct preceding the challenged decision.'" *Usenko v. MEMC LLC*, 926 F.3d 468, 473 (8th Cir. 2019) (citation omitted). Where -- as here -- a plaintiff alleges that "a prudent fiduciary in like circumstances" would have selected different investment options or would have made different choices with respect to the Plan's recordkeeper "based on the cost," that "plaintiff must provide a sound basis for comparison -- a meaningful benchmark." *Meiners*, 898 F.3d at 822-23 (affirming dismissal of claim for breach of ERISA fiduciary duties where the complaint lacked "'sufficient factual matter, accepted as true,' to demonstrate" that defendants acted imprudently (citation omitted)). Plaintiffs' Amended Complaint falls far short of this standard, and instead, regurgitates allegations that other courts have repeatedly dismissed in nearly identical circumstances. So too should this Court.[4]

---

[4] The Amended Complaint does not appear to allege a claim for breach of the duty of loyalty. In an abundance of caution, Defendants note that to the extent Plaintiffs intended to allege such a claim, that claim should be dismissed because Plaintiffs have failed to allege any facts supporting a separate breach of the duty of loyalty claim. *See, e.g., Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685 (ALC), 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019) (holding that "allegations [that] merely ride the coattails of Plaintiffs' duty-of-prudence

**A.** **Plaintiffs' Conclusory Recordkeeping Fee**
**Allegations Fail To State A Claim For Breach Of Fiduciary Duty**

Plaintiffs assert that Defendants breached their fiduciary duties by allowing Plan

participants to pay allegedly "excessive recordkeeping and administrative fees" to the Plan's

recordkeeper, T. Rowe Price. (*See* Am. Compl. ¶¶ 77, 90, 92.) Plaintiffs attempt to support this

claim through a patchwork of speculative assertions and theories that have been rejected by

numerous courts under similar circumstances, and should be rejected here as well.

**1.** **Plaintiff's Recordkeeping Fee Calculations Are Unsupportable**

Plaintiffs assert that Plan participants paid between $47 and $88 annually for

recordkeeping fees and include the following chart in the Amended Complaint.

|  | Participants | Direct Comp | Indirect Comp | Forfeitures | Total | $PP |
|---|---|---|---|---|---|---|
| **2020** | 53,561 | $2,609,734 | $48,714 | -$4,000 | $2,654,448 | $49.56 |
| **2019** | 52,426 | $2,607,101 | $87,176 | -$27,000 | $2,667,277 | $50.88 |
| **2018** | 49,782 | $2,301,452 | $81,538 | -$11,000 | $2,371,990 | $47.65 |
| **2017** | 51,646 | $2,474,032 | $774,140 | -$85,000 | $3,163,172 | $61.25 |
| **2016** | 51,084 | $4,026,016 | $603,131 | -$163,000 | $4,466,147 | $87.43 |

(Am. Compl. ¶ 90.) Plaintiffs purport to calculate indirect compensation in the table above "by

using the percent of revenue sharing reported for each fund on Schedule C of the form 5500 for

each year at issue relating to indirect revenue." (*Id.* ¶ 90 n. 11.) However, Plaintiffs do not

explain why revenue sharing payments should be *added* to the calculated per-participant

recordkeeping fee when, in fact, revenue sharing fees are frequently -- and were in this

case -- rebated back to Plan participants in their entirety. *See, e.g.*, *Cates v. Trustees of*

*Columbia Univ. in City of New York*, No. 1:16-cv-06524 (GBD) (SDA), 2019 WL 8955333, at

*2 (S.D.N.Y. Oct. 25, 2019) (observing that "many service providers began to offer caps on their

---

allegations . . . are insufficient to state a breach of loyalty claim"); *Tobias v. NVIDIA Corp.*, No.
20-CV-06081-LHK, 2021 WL 4148706, at *16 (N.D. Cal. Sept. 13, 2021) (dismissing breach of
the duty of loyalty claims that "hinge[d] entirely on breach of the duty of prudence allegations").

7

recordkeeping fees . . . such that if the total amount collected through revenue sharing payments exceeds the total contracted amount, the excess amount could be used to pay for other plan services or rebated to plan participants"), *report and recommendation adopted*, No. 16 Civ. 6524 (GBD) (SDA), 2020 WL 1528124 (S.D.N.Y. Mar. 30, 2020).

Moreover, Plaintiffs' indirect compensation calculations do not line up with the Plan's Forms 5500. (*See* Hines Decl. Exs. 1-5.) For example, Plaintiffs calculate an indirect compensation of $39,440 from the TRP Stable Value Fund in 2019. (*See* Am. Compl. Appendix "A".) But Schedule C of the Plan's 2019 Form 5500 does not report any revenue sharing from the Stable Value Fund in 2019. (*See* Hines Decl. Ex. 4.) Although Plaintiffs assert, "should there be a fund which we believed paid additional revenue sharing not listed in Schedule 'C,' the information would have been obtained from the funds' prospectus" (Am. Compl. ¶ 90 n.11), Plaintiffs do not cite to any prospectuses and Defendants could not locate any prospectuses to support Plaintiffs' allegations. Such unsupported allegations are insufficient to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Marks v. Trader Joe's Co.*, No. CV 19-10942 PA (JEMx), 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020) (dismissing excessive fee allegations and observing that "Plaintiffs' guess that the Plan pays $140 per participant for recordkeeping fees has 'no factual basis'").[5]

---

[5] Notably, Plaintiffs' calculations are also riddled with mathematical errors. For example, Plaintiffs calculate an indirect compensation of $12,455 for the Blackrock Equity Dividend Fund in 2018 by multiplying $2,491,000 by 0.10%. (*See* Am. Compl. Appendix "A".) Of course, $2,491,000 multiplied by 0.10% is actually equal to $2,491.

### 2. The Comparative Plans That Plaintiffs Cite Do Not Provide Meaningful Benchmarks For the Plan's Recordkeeping Fees

Plaintiffs assert that the recordkeeping fees allegedly paid by the Plan -- which, as explained above, have no factual support -- are excessive "[b]y way of comparison." (Am. Compl. ¶ 91.) In support, Plaintiffs refer to (1) the alleged recordkeeping fees paid in 2018 by eight other retirement plans "with more than 15,000 participants," (2) the alleged recordkeeping fees paid in various years by 11 other retirement plans "ranging in size from 3,000 participants to over 18,000 participants," and (3) a discovery stipulation by a different recordkeeper -- Fidelity -- in an unrelated litigation concerning the "value of recordkeeping services" that Fidelity provided to its own retirement plan. (*Id.* ¶¶ 93-99.) Contrary to the Eighth Circuit's instruction that a plaintiff must provide "a meaningful benchmark," Plaintiffs' comparisons are inapposite. *See Meiners* 898 F.3d at 822.

*First*, Plaintiffs' comparison of the Plan's alleged recordkeeping fees to nineteen other plans' alleged recordkeeping fees is unavailing. (*See* Am. Compl. ¶¶ 96-97.) Plaintiffs' purported side by side comparison focuses solely on the size of the comparator plans (which broadly range from 3,146 participants with $446 million in assets to 47,358 participants with $3 billion in assets) and crucially fails to address how the *services* provided by T. Rowe Price to the Plan are equivalent in value to the services provided to the comparator plans, the majority of which are serviced by different recordkeepers altogether. (*See id.* ¶¶ 11, 96-97.) Plaintiffs' unsupported assertion that "[t]he services chosen by a large plan do not affect the amount charged by recordkeepers" (*id.* ¶ 80) has been rejected by numerous courts.

For example, earlier this year, Judge Clark in the Eastern District of Missouri dismissed excessive recordkeeping claims premised on a comparison of a plan's alleged fees to "a survey conducted by NEPC, an investment consulting firm, of 121 defined contribution

plans." *See Riley v. Olin Corp.*, No. 4:21-cv-01328-SRC, 2022 WL 2208953 at *3 (E.D. Mo. June 21, 2022). Judge Clark held that the survey was not a "meaningful benchmark" because it considered fees charged by various plans "without spelling out, in any degree of detail, the services the plans received in return." *Id.* at *4. Similarly in *Mator v. Wesco Distribution, Inc.*, the court dismissed claims of excessive recordkeeping fees based on a "price tag to price tag comparison," holding that the plaintiffs' "purported side by side comparison d[id] not account for the quality of services" and that "[w]ithout such allegations, the [p]laintiffs have engaged in a speculative fishing expedition without a plausible factual basis." No. 2:21-CV-00403-MJH, 2022 WL 3566108, at *7 (W.D. Pa. Aug. 18, 2022). Like in *Riley* and *Mator*, Plaintiffs' minimal attempts to benchmark the Plan's recordkeeping fees do not provide a "sound basis for comparison." *See Meiners* 898 F.3d at 822.

   *Second*, Plaintiffs provide no explanation for why a discovery stipulation filed by Fidelity in a different litigation -- *Moitoso et al. v. FMR, et al.*, No. 1:18-cv-12122-WGY (D. Mass. 2020) -- has any bearing on the recordkeeping fees paid by *this* Plan. (*See* Am. Compl. ¶¶ 93-95.) Accordingly, several other courts have rejected nearly identical recordkeeping claims premised on the same Fidelity discovery stipulation. *See, e.g.*, *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021) (rejecting the same Fidelity stipulation and holding that the plaintiff did "not explain how the services that Fidelity provided to its own plans are equivalent in value to the services Fidelity provided to the [p]lan at issue in this case"); *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 2:20-CV-01493-CCW, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (rejecting comparison to the Fidelity stipulation and observing that it was "premised on unspecified recordkeeping services . . . without any comparison to the services provided to the Plan" at issue). As in *Wehner* and *Johnson*, the

Plaintiffs here do not make any effort to compare the services provided by T. Rowe Price to the Plan against the services provided by Fidelity to its own plan. Plaintiffs' conclusory assertion that the "Plan's demographics match[] favorably with the Fidelity's plan's demographics" (Am. Compl. ¶ 95) does nothing to cure that crucial issue. Moreover, while Plaintiffs refer to Fidelity's statement that its own plan "did not receive any broader or more valuable recordkeeping services" than other large Fidelity-recordkept plans (Am. Compl. ¶ 94), Plaintiffs fail to address whether Fidelity's services may have been *narrower or less valuable* -- and therefore may have cost less -- than the services that T. Rowe provided to the O'Reilly Plan participants. Far from offering a "meaningful benchmark," the *Moitoso* stipulation is irrelevant.

### 3. Plaintiffs' Speculative Allegation That Plan Fiduciaries Did Not Conduct A Request For Proposal Does Not Suggest Imprudence

Plaintiffs allege, without citing any factual support, that "there is little to suggest that Defendants conducted an appropriate RFP [Request for Proposal] at reasonable intervals -- or certainly at any time prior to 2016 through the present -- to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers." (Am. Compl. ¶ 89.) Even crediting Plaintiffs' conclusory allegations, they are insufficient to create an inference of imprudent conduct by Defendants. Numerous courts have held that ERISA does not compel plan fiduciaries to regularly solicit competitive bids from recordkeepers to satisfy their fiduciary obligations. *See, e.g.*, *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) (holding that "the allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation"); *Ferguson*, 2019 WL 4466714, at *8 ("ERISA does not require plan fiduciaries to obtain competitive bids from plan service providers"); *Riley*, 2022 WL 2208953, at *5 (holding that the "fail[ure] to

11

conduct periodic requests for proposal and to renegotiate also do not cause the Court to draw an inference that the investment committee acted imprudently").  The same result is warranted here.

**B.**     **Plaintiffs' Verbatim Allegations Concerning the Investment Options In The Plan Fail To State A Claim For Breach Of Fiduciary Duty**

Plaintiffs' Amended Complaint does not add a single allegation to substantiate Plaintiffs' challenge to the Plan fiduciaries' decision to retain ten of the Plan's thirty investment options.  (Am. Compl. ¶¶ 62, 66-70.)  Plaintiffs assert that Defendants could not have acted prudently in evaluating ten of the Plan's investment options because those options had higher investment management fees than certain median and average fees calculated by the Investment Company Institute ("ICI").  (Am. Compl. ¶¶ 67-68.)  For multiple reasons, Plaintiffs' bare allegations that some of the plan's investment options cost more than other options available in the market do not support an inference of imprudence.

*First*, as several courts have explained, the "ICI Median" and "ICI Average" Plaintiffs rely on cannot serve as "meaningful benchmark[s]" for the ten investment options that Plaintiffs challenge.  *See, e.g.*, *Riley*, 2022 WL 2208953, at *5 (citation omitted).  In *Riley*, Judge Clark dismissed the plaintiffs' allegation that "many of the funds in the plan had expense ratios 'significantly greater than the ICI median and ICI averages,'" observing that although "the ICI data on which [plaintiffs] rely apparently considers the plan size and the high-level 'investment style' of each fund . . . this does not suffice."  *Id.* (citation omitted).  Rather, the "Eighth Circuit requires the Court to thoroughly compare challenged funds and putative benchmark funds with regard to fund holdings, investment style, and strategy — and neither the Plaintiffs nor the ICI data provide any of this required information."  *Id.  See also Perkins v. United Surgical Partners Int'l Inc.*, No. 3:21-CV-00973-X, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022) (dismissing ERISA breach of fiduciary duty allegations and observing that "several courts have rejected the

Brightscope/ICI study median as a meaningful benchmark . . . because the ICI study does not distinguish between actively and passively managed accounts, it is an insufficient benchmark to plausibly allege imprudence"). Plaintiffs here rely exclusively on the ICI median and average fees, and therefore fail to provide any meaningful benchmark to support their claim that the Plan's investment options were too expensive.

*Second*, even crediting Plaintiffs' averages, their allegations are nevertheless inadequate. Plaintiffs myopically focus on the costs of ten of the Plan's investment options, as though those costs can be divorced from the investment options' other critical features, such as performance. Indeed, the Amended Complaint does not allege that *a single* one of the Plan's ten challenged investment options underperformed.[6] Contrary to Plaintiffs' allegations, "[a] fiduciary is not required to 'scour the market to find and offer the cheapest possible fund, as there are other factors for which a fiduciary -- and a participant -- might want to optimize besides cost.'" *See Kurtz v. Vail Corporation*, 511 F. Supp. 3d 1185, 1198 (D. Colo. 2021) (citation omitted); *see also Meiners*, 898 F. 3d at 823-24 ("the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice" (emphasis omitted)). In this case, separating the costs of the Plan's investment options from their performance results in nonsensical allegations. For example, one of the funds that Plaintiffs challenge as "being more expensive than comparable funds" -- the PIMCO Income Instl (PIMIX) (Am. Compl. ¶¶ 62, 67-68) -- has outperformed its peers on a trailing one-year,

---

[6] Plaintiffs' passing assertion that Defendants "fail[ed] to obtain reasonably-priced and properly performing investments" and vague allegation that Plaintiffs were injured by "underperforming funds" (Am. Compl. ¶¶ 18-21, 70) is entirely insufficient to state a claim for underperformance. Plaintiffs do not even state *which funds* in the Plan allegedly performed poorly. (*Id.*) To the extent that Plaintiffs intended to allege a claim based on underperformance, that claim must be dismissed because Plaintiffs failed to allege *any facts* in support.

13

three-year, five-year, and ten-year basis according to Morningstar.[7]  (*See* Hines Decl. Ex. 6.)

Plaintiffs' Amended Complaint contains no explanation for why such a high-performing fund is

an imprudent choice for the Plan merely because of its costs.  As other courts have recognized,

"[f]iduciaries have latitude to value investment features other than price (and indeed, are required

to do so)."  *White v. Chevron Corp.*, 2016 WL 4502808, at *10.

## C.   Plaintiffs Recycle Their Total Plan Cost Allegations And Again Fail To State A Claim For Breach Of Fiduciary Duty

In a last ditch attempt to state a claim, Plaintiffs recycle the exact same allegations

that the Plan's "total plan cost"[8] was higher than the average total plan cost for plans that have

more than $1 billion as calculated by the ICI in 2018.  (*See* Compl. ¶¶ 70-75.)  This allegation

suffers from the same core deficiencies as pled in Plaintiffs' initial Complaint.

Plaintiffs' "total plan cost" allegation fail to provide a "meaningful benchmark."

*See Meiners* 898 F.3d at 822.  As in the initial Complaint, Plaintiffs merely compare the Plan's

"total plan cost" to an average generated by the ICI for "plans that have over 1 billion dollars,"

without describing how the services received and the investment options selected by those plans

are similar to or different from those of the Plan.  (*See* Am. Compl. ¶¶ 74-75.)  The fact that two

plans have similar total assets provides no information about the services and investment options

that those plans offer or the reasonable costs associated with those choices.  *See, e.g.*, *Perkins*,

2022 WL 824839, at *6 (rejecting "alleg[ation] that the Plan's total costs were the highest in its

peer group," and observing that "the plaintiff must 'plead that the administrative fees are

---

[7]     Fund performance data is publicly available on Morningstar.com.  Similar to the Forms 5500, the Court may consider this data at the motion to dismiss stage.  *See supra* note 3.

[8]     Plaintiffs rely on the "total plan cost measure" as developed by BrightScope through the ICI, which allegedly "includes all fees on the audited Form 5500 reports as well as fees paid through investment expense ratios."  (Am. Compl. ¶ 72.) (citation omitted.)

excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue'" (emphasis in original) (citation omitted)); *Ferguson*, 2019 WL 4466714, at *8 (same). Plaintiffs' "total plan cost" allegations amount to nothing more than the unremarkable assertion that different plans may obtain different services and investment options for different costs.

## II.    PLAINTIFFS' MAKE NO IMPROVEMENTS TO THEIR CONCLUSORY ALLEGATIONS CONCERNING THE DUTY TO MONITOR AND THEREFORE FAIL TO STATE A CLAIM (COUNT II)

Count II repeats Plaintiffs' conclusory allegations that O'Reilly and O'Reilly's Board of Directors breached their fiduciary duties by failing to monitor the performance and processes of other Plan fiduciaries.  (Am. Compl. ¶¶ 108-114.)  Count II should be dismissed because it is merely derivative of Plaintiffs' prudence claims.  Courts have repeatedly dismissed such derivative claims where, as here, the underlying breach of fiduciary duty allegations fail to state a claim.  *See, e.g.*, *Riley*, 2022 WL 2208953, at *7 (dismissing failure to monitor claim where the plaintiffs' "only argument against dismissal presumes that they state a breach-of-fiduciary-duty claim against the investment committee"); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019) ("the duty to monitor is wholly derivative of [the breach of fiduciary duty claims in] Count One, and a 'derivative claim, such as a claim alleging a breach of the duty to monitor [fiduciaries], cannot survive without . . . an underlying breach'" (citation omitted)); *Cunningham v. USI Insur. Servs., LLC*, No. 21 Civ. 1819 (NSR), 2022 WL 889164, at *6 (S.D.N.Y. Mar. 25, 2022) ("Because '[a] claim for breach of the duty to monitor requires an antecedent breach to be viable,' and Plaintiff fails to sufficiently state a claim that Defendants breached either their duties of prudence and loyalty, the Court concludes that Plaintiff's claim for failure to monitor also fails'" (citation omitted)).

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted.

Dated:  September 2, 2022

Respectfully submitted,

/s/ *James R. Carroll*
Charles B. Cowherd   Mo. Bar No. 27087
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone:     417-888-1000
Facsimile:      417-881-8035
ccowherd@spencerfane.com

James R. Carroll (admitted *pro hac vice*)
Michael S. Hines (admitted *pro hac vice*)
Mary E. Grinman (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE**
   **MEAGHER & FLOM LLP**
500 Boylston Street
Boston, Massachusetts 02116
Telephone:     617-573-4800
Facsimile:      617-573-4822
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

***Counsel for Defendants***
***O'Reilly Automotive, Inc., The Board of Directors***
***of O'Reilly Automotive, Inc., The O'Reilly***
***Automotive 401(k) Plan Investment Committee, and***
***John Does 1-30***

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, Southern Division, on this 2nd day of September, 2022, with notice of case activity generated and sent electronically to all counsel of record.

/s/ *James R. Carroll*

**APPENDIX A**

**O'REILLY AUTOMOTIVE, INC. PROFIT SHARING AND
SAVINGS PLAN INVESTMENT OPTIONS AS OF DECEMBER 31, 2020**[1]

| Investment Option | | Management Style |
|---|---|---|
| **I. Mutual Funds** | | |
| **A. Asset Class: Stocks** | | |
| 1. | American Beacon Small Cap Value Fund | Active |
| 2. | BlackRock Equity Dividend Fund | Active |
| 3. | Fidelity 500 Index Fund | Passive |
| 4. | Fidelity Extended Market Index Fund | Passive |
| 5. | Harbor Capital Appreciation Fund | Active |
| 6. | JPMorgan Mid Cap Value Fund | Active |
| 7. | Oakmark International Fund | Active |
| 8. | T. Rowe Price Institutional Mid Cap Equity Growth Fund | Active |
| 9. | T. Rowe Price QM U.S. Small-Cap Growth Equity Fund | Active |
| 10. | Vanguard Federal Money Market Fund | Active |
| 11. | Vanguard International Growth Fund | Active |
| 12. | Vanguard Total International Stock Index Fund | Passive |
| **B. Asset Class: Bonds** | | |
| 13. | Metropolitan West Total Return Bond Fund | Active |
| 14. | Fidelity U.S. Bond Index Fund | Passive |
| 15. | PIMCO Income Fund | Active |
| 16. | Vanguard Inflation Protected Securities Fund | Active |
| **II.  Stocks** | | |
| 17. | O'Reilly Automotive, Inc. common stock | Active |
| **III.  Collective Trust Funds** | | |
| 18. | T. Rowe Price Retirement 2005 Trust | Active |
| 19. | T. Rowe Price Retirement 2010 Trust | Active |
| 20. | T. Rowe Price Retirement 2015 Trust | Active |
| 21. | T. Rowe Price Retirement 2020 Trust | Active |
| 22. | T. Rowe Price Retirement 2025 Trust | Active |
| 23. | T. Rowe Price Retirement 2030 Trust | Active |
| 24. | T. Rowe Price Retirement 2035 Trust | Active |
| 25. | T. Rowe Price Retirement 2040 Trust | Active |
| 26. | T. Rowe Price Retirement 2045 Trust | Active |
| 27. | T. Rowe Price Retirement 2050 Trust | Active |
| 28. | T. Rowe Price Retirement 2055 Trust | Active |
| 29. | T. Rowe Price Retirement 2060 Trust | Active |
| 30. | T. Rowe Price Stable Value Common Trust | Active |

---

[1]        (*See* Hines Decl. Ex. 5.)